UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

IN ADMIRALTY

THOMAS HENRY BAKER, and
BLUE WATER ENTERPRISES, INC.,

    Plaintiffs,

v.

TOWN OF PALM BEACH, FLORIDA, and the
TOWN OF PALM BEACH POLICE DEPARTMENT,

    Defendants.
_____/

## VERIFIED COMPLAINT

COME NOW the Plaintiffs, THOMAS HENRY BAKER and BLUE WATER ENTERPRISES, INC., by and through undersigned counsel, and hereby sue the TOWN OF PALM BEACH, FLORIDA, and the TOWN OF PALM BEACH POLICE DEPARTMENT and state as follows:

1. This is an action for damages.

2. This is an Admiralty and Maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is within the Admiralty subject matter jurisdiction of this Court based upon 28 U.S.C. §1333, and the U.S. Constitution, Article III, Section 2.

### PARTIES

3. Plaintiff THOMAS HENRY BAKER (hereafter Baker) is a Florida resident.

4. BLUE WATER ENTERPRISES, INC., (hereafter Blue Water) is a corporation which owns the vessel, *M/Y Time Out*, a 1989 80' Hatteras Motoryacht, official number 946053. The hailing port for the yacht is Port Canaveral.

5. The Town of Palm Beach is a municipality incorporated in 1911; it is located within Palm Beach County, Florida, and therefore within the jurisdiction of this Court. The Town of Palm Beach operates on a Town Council/ City Manager form of government.

6. The council consists of a mayor and five council members who serve as the policy-making body for the Town of Palm Beach.

7. The Town of Palm Beach Police Department is a department of the Town of Palm Beach.

## ADMIRALTY JURISDICTION

### *LOCATION*

8. The Town of Palm Beach is a community located on the far eastern side of Palm Beach County, Florida, with more than 10 miles of beach front on the navigable waters of the Atlantic Ocean.

9. The incident which is the subject matter of this Complaint occurred on the navigable waters of the United States within the Town of Palm Beach.

### *SUBSTANTIAL RELATIONSHIP TO TRADITIONAL MARITIME ACTIVITY*

10. At all relevant times, the *M/Y Time Out* was a vessel in navigation. It was an artificial contrivance that was capable of being used, and was in fact used, as a means of transportation on water. See 1 U.S.C. § 3. It was not merely "practically capable of maritime transportation, Stewart v Dutra Construction, Co., 543 U.S. 481, 497, 125 S. Ct. 1118, 160 L. Ed. 2d 932 (2005), it was actually capable of such use and was so used. A reasonable observer, looking to the physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." Lozman v. City of Riviera Beach, Fla., 133 S. Ct. 735, 741, 133 S. Ct. 735, 184 L. Ed. 2d 604 (2013).

11. Navigating a vessel upon the navigable waters of the United States is a traditional maritime activity. See: Jerome B. Grubart. Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 540 (1995) ("Navigation of boats in navigable waters clearly falls within the substantial relationship ... "); Foremost Ins. Co. v. Richardson, 457 U.S. 668 (1982); Sisson V. Ruby, 497 U.S. 358, 362 (1990).

12. Pulling the operator off a vessel and leaving it unattended has the potential to disrupt maritime commerce. The vessel could have broken loose and drifted into the Port of Palm Beach entrance channel or otherwise created a hazard to navigation. See Foremost Ins. Co. v. Richardson, 457 U.S. 675, (1982); Jerome B. Grubart. Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 533 (1995); Sisson v. Ruby, 497 U.S. 362 (1990).

13. This matter involves a vessel on navigable waters. It bears a substantial relationship to a traditional maritime activity and has the potential to disrupt maritime commerce. As such, this matter is within the scope of admiralty jurisdiction of the District Court.

## FACTS

14. In the early morning of September 7, 2016, Plaintiff Baker was navigating the *M/Y Time Out* from West End in the Bahamas to Palm Beach, Florida, when he suffered an engine failure as he neared the Palm Beach Inlet.

15. Plaintiff Baker called "mayday" seeking assistance and attempted to anchor his vessel about a half-mile off shore from the Town of Palm Beach.

16. Unfortunately before he could receive assistance from a towing company, five to seven foot seas and high winds pushed his vessel into the beach in the Town of Palm Beach bow first, just on the south side of the Palm Beach Inlet jetty.

17. Town of Palm Beach police arrived at the beach and arrested Plaintiff Baker, charging him with boating under the influence (BUI) in violation of section 327.35(1) Fla. Stat. (2016).

18. Plaintiff Baker asked the police for the opportunity to make arrangements to secure his vessel. His request was denied. The *M/Y Time Out* was left floundering in rough surf and high winds.

19. In violation of generally accepted polices, procedures and practices exercised by law enforcement statewide in Florida, the Town of Palm Beach police failed to make arrangements to tow and impound the *M/Y Time Out*.

20. The Florida Fish and Wildlife Conservation Commission General Order 09 states:

    1 Policy

    B It is the policy of the FWC Division of Law Enforcement to Establish procedures for the towing/impoundment of vehicles and vessels in order to:
    (1) ***Protect the property of arrested individuals upon incarceration.*** (Emphasis added.)

    3 Procedures

    A Vehicles and Vessels
    (1) Vehicles and Vessels ***shall be towed and impounded*** for the following reasons: (Emphasis added)

    >   (e) If the driver/orperator has been arrested for DUI/BUI and no other licensed driver/operator is available. (Exhibit 1)

21. The Florida Highway Patrol Policy Manual , Vehicle Towing and Impoundment Policy 11.04 states:

    11.04.03 Objectives

    >   A. ***To protect the property of arrested individuals upon incarceration.*** (Emphasis added.)

    11.04.02 Policy

        It is the policy of the Florida Highway Patrol to Provide procedures for the towing, impoundment and storage of vehicles.

    11.04.04 Procedures

    A. Vehicles ***shall be towed and impounded*** in the following situations:
        5. If the driver has been arrested for Driving Under the Influence and no other licensed driver is available. (Exhibit 2) (Emphasis added.)

22. Being unsecured and unattended, the vessel completely turned about in the rough seas and wind and within a few hours was astern to the shore taking on water and sand.

23. When Baker returned to his vessel he was advised by the local towing and salvage companies it was no longer possible to tow the vessel off the beach.

24. In accordance with section 768.28, Florida statutes (2016), notice of this law suit has been given to the Town of Palm Beach and the Town of Palm Beach Police Department. (Exhibit 3)

## COUNT I - NEGLIGENCE

25. Plaintiffs reallege and incorporate paragraphs 1 - 24 as though fully set forth herein.

26. On September 7, 2016, Town of Palm Beach Police arrested Plaintiff Baker and removed him from the vessel, *M/Y Time Out*, charging him with BUI.

27. In accordance with generally accepted polices, procedures and practices exercised by law enforcement statewide in Florida, Defendants Town of Palm Beach and Town of Palm Beach Police Department, had a duty to protect Plaintiffs' property and to have Plaintiffs' vessel towed and impounded.

28. Defendants, Town of Palm Beach and Town of Palm Beach Police Department, breached their duty to Plaintiffs when they failed to make arrangements to protect the *M/Y Time Out* and have it towed and impounded in accordance with generally accepted polices, procedures and practices exercised by law enforcement statewide in Florida.

29. Defendants further breached their duty to Plaintiffs and violated section 823.11, Florida Statutes (2015), when they left or abandoned the *M/Y Time Out* in a wrecked condition upon any public waters of this state. Violation of section 823.11 is a first degree misdemeanor.

30. As a direct result of the negligence and potentially criminal actions of the Town of Palm Beach and the Town of Palm Beach Police Department, Plaintiffs' vessel was destroyed.

WHEREFORE, Plaintiffs demand judgement for damages in their favor for the value of the vessel *M/Y Time Out* in excess of $450,000.00, and for all other relief this Court deems just and proper.

## BENCH TRIAL

In accordance with general maritime law, Plaintiffs demand a bench trial for the hearing of this matter.

Respectfully submitted this 20th day of October, 2016.

s/ Joanne M. Foster

Joanne M. Foster, FBN 134635
Guy Yudin & Foster, LLP
55 East Ocean Blvd.
Stuart FL 34994
772-286-7372 x207
772-220-3318 (fax)
jfoster@guyyudinlaw.com
*Attorney for Plaintiffs*

## VERIFICATION

STATE OF FLORIDA     )
COUNTY OF PALM BEACH )

THOMAS HENRY BAKER being duly sworn, deposes and says:

I am the Plaintiff and representative of Plaintiff BLUE WATER ENTERPRISES, INC., as described herein. I have read the foregoing Verified Complaint and know the facts thereof and the same are true of my own knowledge.

The sources of my information and the grounds of my belief as to all matters in the Verified Complaint are based on my own knowledge.

THOMAS HENRY BAKER

Subscribed and sworn to before me this ___ day of October, 2016.

Notary Public
My commission expires:



CATHERINE C BROOT
Notary Public - State of Florida
Commission # GG 036066
My Comm. Expires Oct 19, 2020
Bonded through National Notary Assn.

GUY YUDIN & FOSTER, LLP
55 East Ocean Blvd, Stuart FL 34994  772-286-7372  772-220-3318

# Florida Fish and Wildlife Conservation Commission

# Division of Law Enforcement



# General Orders Manual

# June 24, 2016



PLAINTIFF'S EXHIBIT
1

| Florida Fish and Wildlife Conservation Commission – Division of Law Enforcement |||
|---|---|---|
| | TITLE<br><br>**VEHICLE/VESSEL TOWING AND IMPOUNDMENT** | GENERAL ORDER<br><br>09<br><br>EFFECTIVE DATE<br><br>December 16, 2008 |
| | APPLICABILITY<br><br>ALL SWORN MEMBERS AND DUTY OFFICERS | RESCINDS/AMENDS<br><br>July 21, 2008<br><br>IPM 08-09 |
| REFERENCES<br><br>S. 323.001, F.S. |||

## 1 POLICY

A   The FWC Division of Law Enforcement authorizes its sworn members to tow, impound and store vehicles and vessels in accordance with Florida Statutes and the procedures provided in this General Order.

B   It is the policy of the FWC Division of Law Enforcement to establish procedures for the towing/impoundment of vehicles and vessels in order to:

   (1)   Protect the property of arrested individuals upon incarceration;

   (2)   Take precautions to protect the owner's property after an accident, if the owner/operator is unable to do so;

   (3)   Protect the Division from liability claims; and to

   (4)   Effectively provide public service assistance if required.

## 2 RESPONSIBILITIES

A   Members are responsible for following the policies and procedures given in this General Order to protect individual and public property, secure evidence of crime, and to minimize the potential of risk exposure of the Division and its members.

B   Members are responsible for adhering to Section 323.001, Florida Statutes regarding holds placed on vehicles in storage at a wrecker operator storage facility.

## 3 PROCEDURES

A   **Vehicles and Vessels**

   (1)   Vehicles and Vessels shall be towed and impounded for the following reasons:

      (a)   To secure evidence of a crime.

      (b)   To protect the public or property of the public.

      (c)   To protect the owner's/operator's vehicle/vessel and property within.

      (d)   To protect the Division from liability claims.

      (e)   If the driver/operator has been arrested for DUI/BUI and no other licensed driver/operator is available. Also, no vehicle/vessel will be left in the possession of any person who appears to be impaired from the use of alcohol or drugs.

- (f) As provided in Florida Statutes.

(2) When sworn members are not required to impound or tow a vehicle, they may determine from the driver/owner, if present, if the driver/owner has a preference. The vehicle may be left at the scene, removed by the owner's representative or the owner may request a towing company. If not, the local law enforcement agency maintaining a Rotation Wrecker Selection System will be contacted.

(3) Sworn members shall not discuss alternatives to impoundment after the determination that the vehicle/vessel should be towed and a wrecker service has been notified.

(4) When a vehicle/vessel is towed at the sworn member's request, a Vehicle/Vessel Storage Receipt and Written Hold Order (FWC/DLE-120) will be completed. The form must be completed in its entirety to include all of the following information:

- (a) Date and Time;
- (b) Location;
- (c) Name of requesting member;
- (d) Reason for removal or tow;
- (e) Name of towing service;
- (f) Location of vehicle;
- (g) Notification (or attempts) to the registered owner;
- (h) Members may attach an Incident Report Summary Narrative (FWC/DLE-045A) if necessary to document any additional information.

(5) If the vehicle does not need to be held then the Hold Sections on the form should not be completed. The following areas will be inventoried and any property contained therein listed on the Vehicle/Vessel Storage Receipt and Written Hold Order (FWC/DLE-120):

- (a) The passenger compartment of the vehicle, including all packages and containers.
- (b) The trunk compartment of the vehicle, including all packages and containers.
- (c) The glove compartment of the vehicle.
- (d) Any other areas that may be designed and normally used to hold personal property of the owner.
- (e) Any locked, secured or wrapped packages or containers shall be noted as being locked and will not be opened unless prescribed by law or with the owner's consent.

B   Holds Placed on Vehicles/Vessels

(1) A sworn member shall have the authority to place a verbal hold on a vehicle/vessel not to exceed 5 days, excluding holidays and weekends.

- (a) Verbal holds shall be removed as soon as possible.
- (b) The sworn member placing the hold is responsible for notifying the wrecker operator when the hold has been removed.

(2) On verbal holds the Hold Section of the Vehicle/Vessel Storage Receipt and Written Hold Order (FWC/DLE-120) shall not be completed.

(3) As soon as possible, the sworn member shall notify their supervisor and the communications center of the verbal hold and for what reasons.

(4) Written approvals for hold extensions beyond the five day requirement must be approved by a Regional Captain or above and the Hold Sections of the Vehicle/Vessel Storage Receipt and Written Hold Order (FWC/DLE-120) must be completed within the 5 day limitation. The

Regional Captain shall also verbally verify the Division's intentions with the towing/storage facility.

(5) The Division may have the vehicle/vessel removed to a designated impound lot, in which event the vehicle/vessel will not be released by the Division to the owner or lienholder of the vehicle until proof of payment of the towing and storage charges incurred by the wrecker operator is presented to the Division.

(6) If the Division chooses to have the vehicle/vessel remain at the wrecker operator's storage facility beyond 5 days, excluding holidays and weekends, pursuant to the written notification (Vehicle/Vessel Storage Receipt and Written Hold Order (FWC/DLE-120)), the Division shall be responsible for payment of the storage charges incurred by the wrecker operator for the extended period.

   (a) In such event, the owner or lienholder shall be responsible for payment of accrued towing and storage charges for the first 5 days, excluding holidays and weekends, or any period less than the first 5 days, excluding holidays and weekends, when the Division either moves the vehicle from the wrecker operator's storage facility to a designated impound lot or provides written notification (Vehicle/Vessel Storage Receipt and Written Hold Order) to extend the hold on the vehicle prior to the expiration of the 5 days, excluding holidays and weekends.

(7) The towing and storage rates for the owner or lienholder of the held vehicle/vessel shall not exceed the rates for the Division.

(8) If there is a judicial finding of lack of probable cause for maintaining the immobilization or impoundment, the Division must pay the accrued charges for any towing and storage.

(9) The requirements for a written hold apply when the following conditions are present:

   (a) The sworn member has probable cause to believe the vehicle/vessel should be seized and forfeited under the Florida Contraband Forfeiture Act, section 932.701 - section 932.704, Florida Statutes.

   (b) The sworn member has probable cause to believe the vehicle/vessel should be seized and forfeited under chapter 379, Florida Statutes.

   (c) The sworn member has probable cause to believe the vehicle/vessel was used as the means of committing a crime.

   (d) The sworn member has probable cause to believe that the vehicle/vessel is itself evidence that tends to show that a crime has been committed or that the vehicle/vessel contains evidence, which cannot readily be removed, which tends to show that a crime has been committed.

   (e) The sworn member has probable cause to believe the vehicle/vessel was involved in an accident resulting in death or personal injury and should be sealed for investigation and collection of evidence by an investigator.

   (f) The vehicle is impounded or immobilized pursuant to section 316.193 or section 322.34, Florida Statutes.

   (g) The sworn member is complying with a court order.

(10) All written holds are to be so indicated on the Vehicle/Vessel Storage Receipt and Written Hold Order (FWC/DLE-120).

(11) When it becomes necessary to place a written hold on a vehicle/vessel, the Regional Captain shall notify the wrecker operator of the approved written hold.

(12) It shall be the responsibility of the Regional Captain requesting the written hold to also notify the wrecker operator when the written hold is approved to be released.

(13) Sworn members should not tow privately owned vehicles with a Commission vehicle.

C  Towing Disabled Vessels

(1) Generally, a sworn member should not tow a disabled vessel, especially if the towed vessel is larger than the patrol vessel being operated.

(2) Whenever feasible, arrangements should be made to have disabled vessels towed by commercial or other towing services.

(3) Towing of disabled vessels should be limited to those instances in which the sworn member determines that persons or property are in peril and other towing resources are not available.

(4) In cases, where towing a disabled vessel becomes necessary, occupants of both vessels must wear personal flotation devices.

(5) Sworn members intending to tow a disabled vessel will request an incident summary number and advise the communications center of the following:

  (a) The registration or description of the vessel.

  (b) The number of occupants on board.

  (c) Where the member intends to tow the vessel.

(6) The sworn member should tow the disabled vessel to the closest safe place unless other factors dictate another location.

(7) The sworn member will advise the communications center where and when the disabled vessel is safely secured.

D  Procedures for FCIC Entries

(1) Sworn members shall contact the appropriate communications center to initiate an FCIC entry on a vehicle when the vehicle is found abandoned and the owner cannot be notified or located.

  (a) Upon towing of the vehicle, the FCIC entry shall document the vehicle as "Abandoned and Impounded."

(2) If the requesting member is later able to locate the owner or receives information that the vehicle has been returned to the owner, the member shall contact the communications center and request removal of the FCIC entry on the vehicle.

## 4 FORMS

| Form Number | Form Title |
|---|---|
| FWC/DLE-045A | Incident Report Summary Narrative |
| FWC/DLE-120 | Vehicle-Vessel Storage Receipt and Written Hold Order |

# FLORIDA HIGHWAY PATROL
POLICY MANUAL



| SUBJECT | POLICY NUMBER |
|---|---|
| VEHICLE TOWING AND IMPOUNDMENT | 11.04 |
| | ISSUE DATE 02/01/96 |
| | REVISION DATE 03/11/13 |
| | TOTAL PAGES 5 |

**11.04.01    PURPOSE**

To prescribe regulations for the towing/impoundment of vehicles by members of the Florida Highway Patrol.

**11.04.02    POLICY**

It is the policy of the Florida Highway Patrol to provide procedures for the towing, impoundment and storage of vehicles.

**11.04.03    OBJECTIVES**

A. To protect the property of arrested individuals upon incarceration

B. To protect the Division from liability

C. To establish guidelines for the towing/impoundment of vehicles of arrested individuals

D. To establish guidelines for the towing, impoundment and storage of vehicles in other law enforcement situations

E. To designate the use of the Inventory and Vehicle Storage Receipt (HSMV 61801).

**11.04.04    PROCEDURES**

A. Vehicles shall be towed and impounded in the following situations:

1. To secure evidence of a crime

2. To protect the public or property of the public

3. To protect the owner's/driver's vehicle and property within that vehicle

4. To protect the Division from liability claims

PLAINTIFF'S EXHIBIT 2

    5.    If the driver has been arrested for Driving Under the Influence and no other licensed driver is available. No vehicle will be left in the possession of any person who appears to be impaired from the use of alcohol or drugs.

    6.    If the vehicle has been vandalized

    7.    As provided in FHP CVE Procedures Manual Chapter 1.08, regarding overdue/pending penalties and the actions taken by a CVE Trooper

    8.    As provided in Section 316.194(3), Florida Statutes; Stopping, Standing or Parking Outside of Municipalities

B.    The Florida Highway Patrol maintains a Wrecker Allocation System, commonly referred to as a Rotation Wrecker List. Guidelines for the Wrecker Qualification and Allocation System can be found in Rule Chapter 15B-9, Florida Administrative Code and FHP Policy 17.02.

C.    Members at the scene, who are requesting a wrecker from the Regional Duty Officer (RDO), shall adhere to the guidelines enumerated in this policy and FHP Policy 17.02 to ensure compliance with the Wrecker Qualification and Allocation System rules.

D.    Members shall not be at liberty to discuss alternatives to impoundment upon the determination that the vehicle should be towed.

E.    If there is no roadblock or emergency situation present, the member should wait until he/she is ready for the vehicle to be removed before calling for a wrecker. This will prevent a wrecker operator from sitting idly by waiting for the member to release the vehicle. Wrecker operators may charge an hourly rate after the first thirty minutes on the scene and a mileage charge for miles outside the ten-mile radius of the operators business. This may result in additional charges to the motorist.

F.    The investigating member shall advise the RDO of all vehicle information needed for Computer Aided Dispatch (CAD) entry and the completion of the wrecker log (i.e., vehicle year, make, tag number, and vehicle identification number (VIN)). This should be done prior to leaving the scene or immediately upon completion of the assignment. This shall apply in all instances where a wrecker is used, whether called by the Division or not.

G.    VEHICLE INVENTORY / VEHICLE TOW REPORT

    1.    Any time a vehicle is towed pursuant to this policy and a member is present at the scene, an Inventory and Vehicle Storage Receipt (also known as the "Vehicle Tow Report" on MobileForms) will be completed.

      a. If the owner/driver of the vehicle is not present to make a request and a wrecker is called from the FHP rotation wrecker list, a complete and thorough inventory of the vehicle will be conducted.

      b. If the owner/driver of the vehicle requests a rotation wrecker, specific company or auto club to remove the vehicle and he/she does not or is incapable of accompanying the vehicle, a complete and thorough inventory of the vehicle will be conducted.

      c. If the owner/driver of the vehicle requests a rotation wrecker, specific company or auto club to remove the vehicle and the owner/driver is present and accompanies the vehicle with the wrecker, no inventory is required. A notation in the inventory section of the report will be made to indicate that the owner/driver went with the vehicle.

2. If no member has been dispatched and a vehicle is towed, such as a call box request for service in a rural area, it is not necessary to complete an Inventory and Storage Receipt. A notation is to be made in the wrecker log that no member was dispatched to the scene.

3. Anytime an inventory of a vehicle is conducted, the following areas will be inventoried and any property contained therein will be listed on the report:

      a. The passenger compartment of the vehicle, including all packages and containers

      b. The trunk compartment of the vehicle, including all packages and containers

      c. The glove compartment of the vehicle

      d. Any other areas that may be designated and normally used to hold personal property of the owner

      e. Any locked, secured or wrapped packages or containers shall be noted as being locked and will not be opened unless prescribed by law or with the owner's consent.

H. HOLDS PLACED ON VEHICLES

1. Holds may be placed on vehicles only for the following reasons:

      a. There is probable cause to believe that the vehicle may be seized and forfeited under the Florida Contraband Forfeiture Act.

    b.    There is probable cause to believe that the vehicle may be seized and forfeited in accordance with Section 372.312, F.S. for a violation of the wildlife laws.

    c.    There is probable cause to believe that the vehicle was used as the means of committing a crime.

    d.    There is probable cause to believe that the vehicle is itself evidence that tends to show that a crime has been committed or that the vehicle contains evidence, which cannot be readily removed, that tends to show that a crime has been committed.

    e.    There is probable cause to believe that the vehicle was involved in a traffic crash resulting in death or personal injury and should be sealed for investigation and collection of evidence by a traffic homicide investigator.

    f.    The vehicle is impounded or immobilized pursuant to Section 316.193, Florida Statutes; Driving Under the Influence or Section 322.34, Florida Statutes; Driving while License Suspended, Revoked, Canceled, or Disqualified.

    g.    In compliance with a court order.

2.    Holds are not to be placed on vehicles solely for the purpose of requiring the owner/driver to contact FHP, where the driver has fled the scene on foot.

3.    Holds should be released as soon as possible. If there is justification and need to hold a vehicle longer than five days, the wrecker operator must be notified in writing and provided the following information:

    a.    The name and agency of the member placing the hold on the vehicle

    b.    The date and time the hold is placed on the vehicle

    c.    A description of the vehicle including its year, make, model, body style, and color; VIN; tag number, state and year; and validation sticker number, state, and year

    d.    The specific reason for placing the hold

    e.    The condition of the vehicle

    f.    The name, address, and telephone number of the storage facility

       A copy of the notification will be provided to an appropriate district supervisor and the Regional Communications Center.

4. It is the responsibility of the member requesting the hold to notify the wrecker operator and RDO when the hold is released.

5. If the vehicle will be held longer than five days, arrangements shall be made to have the vehicle stored at a facility where storage fees will not accrue. Proof of payment of applicable wrecker bills must be presented prior to release of the vehicle.



**GUY, YUDIN & FOSTER**
BOATS BUSINESS PROPERTY

Joanne M. Foster, B.C.S.
Attorney at Law

John S. Yudin
Attorney at Law

September 20, 2016

CMRR# 70080500000158081209 ✓
Gail Coniglio, Mayor
Town of Palm Beach, Florida
360 South County Road
Palm Beach, FL 33480

CMRR# 70080500000158081216
Kirk Blouin, Director of Public Safety
Town of Palm Beach, Florida
360 South County Road
Palm Beach, FL 33480

## NOTICE OF CLAIM IN ACCORDANCE WITH FLA.STAT.§ 768.28 AND GENERAL MARITIME LAW

Dear Mayor Coniglio and Director Blouin:

The law firm of Guy Yudin & Foster, LLP, and attorney Joanne M. Foster represent Mr. Thomas Henry Baker, Blue Water Enterprise, Inc., and the vessel, M/Y Time Out. Notice is being given in accordance with Fla.Stat.§ 768.28. The claim against the Town of Palm Beach is brought in admiralty and exceeds $500,000.00 for the agreed insured value of the yacht and the clean-up costs expended by Mr. Baker.

On the morning of September 7, 2016, while cruising toward the Port of Palm Beach, Mr. Baker lost the use of his starboard engine which caused problems with steerage of his vessel, the *M/Y Time Out*. He called "may day" asking for assistance to guide him into the Port on one engine but unfortunately, before he could receive assistance, the vessel grounded just south of the Port leaving him stranded.

Mr. Baker was removed from his vessel by the Town of Palm Beach Police Department and charged with BUI. The officers who detained him refused to allow Mr. Baker to make arrangements to have the *M/Y Time Out* towed into the Port of Palm Beach. Further, The Town of Palm Beach Police Department refused to make arrangements to secure the vessel in accordance with police policies. The Town of Palm Beach Police Department also refused to allow Mr. Baker's friend, Carol Pulos, to retrieve Mr. Baker's wallet and credit cards from the vessel to make arrangements to secure the yacht. As a result, the Town of Palm Beach Police Department became the bailee of the *M/Y Time Out*.

55 East Ocean Boulevard • Stuart, Florida 34994
772-286-7372 • 772-220-3318 fax
GuyYudinLaw.com

**PLAINTIFF'S EXHIBIT 3**

As the result of the Town of Palm Beach Police Department's gross negligence in failing to carry out police policies and their obligations as bailee of the vessel, the M/Y *Time Out* was destroyed on Palm Beach. Therefore, Mr. Baker is demanding the Town of Palm Beach reimburse him for the agreed insured value of his vessel which is $450,000.00, along with his out of pocket clean up costs which exceed $50,000.00.

Please provide a copy of this letter to your liability insurer.

If you have any questions or concerns regarding this matter I can be reached at 772-286-7372 x207.

Very truly yours,

Joanne M. Foster

Joanne M. Foster, BCS
Florida Board Certified
Admiralty and Maritime Law

cc: Karen Temme
risk@townofpalmbeach.com