UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:16-CV-81771-KAM/Matthewman

**THOMAS HENRY BAKER** and
**BLUE WATER ENTERPRISES, INC**.,

       Plaintiffs,

vs.

**TOWN OF PALM BEACH, FLORIDA**
and **TOWN OF PALM BEACH POLICE DEPARTMENT**

       Defendants.
_____/

## DEFENDANTS TOWN OF PALM BEACH AND TOWN OF PALM BEACH POLICE DEPARTMENT'S MOTION TO DISMISS PLAINTIFFS' VERIFIED COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW

      Defendants, TOWN OF PALM BEACH (hereinafter "Town") and TOWN OF PALM BEACH POLICE DEPARTMENT (hereinafter "Town P.D."), by and through their undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) hereby file this, their Motion to Dismiss Plaintiffs' THOMAS HENRY BAKER (hereinafter "Baker") and BLUE WATER ENTERPRISES, INC., (hereinafter "Blue Water")(collectively "Plaintiffs"), Complaint, and in support thereof state as follows[1]:

    **I.**    ***Introduction***

---

[1] If Defendants' motion is granted and Plaintiffs' verified complaint is dismissed, the Town reserves its right to file its counterclaim against the Plaintiffs for restitution for the cost of removal of the Plaintiffs' vessel and restoration of the Town's property. *See Lawhorn v. Atlantic Refining Co.*, 299 F.2d 353, 356 (5th Cir. 1962) (Defendant does not waive right to file counterclaim if original complaint is dismissed for failure to state a claim); *see also Neil v. S. Fla. Auto Partners*, 397 So. 2d 1160 (Fla. 3d DCA 1981).

1

On October 20, 2016, Plaintiffs filed their verified complaint against Town and Town P.D. wherein they attempt to assert a claim for negligence against Town and Town P.D. under the "undertaker's doctrine," which is a state law claim. *See Exhibit A, Plaintiffs' Verified Complaint.* Plaintiffs allege the Town and Town P.D. were negligent in failing to have Plaintiffs' vessel, *M/Y Time Out*, towed after the Town's officers arrested and charged Baker with boating under the influence (BUI) on September 7, 2016. *See Ex. A* at ¶¶ 27-29. Plaintiffs make the conclusory allegation that this cause of action falls within the admiralty subject matter jurisdiction of this Court because the subject incident occurred on navigable waters. *Ex. A* at ¶ 9.

However, as outlined in greater detail below, Plaintiffs' complaint must be dismissed due to lack of maritime jurisdiction because the alleged incident giving rise to Plaintiffs' cause of action did not occur on navigable waters, but rather, occurred on the beach. Further, Plaintiffs' negligence claim pursuant to the "undertaker's doctrine" also fails as Plaintiffs have not alleged physical harm as a result of the alleged actions of the Town or Town P.D. Moreover, Plaintiffs' claims are based upon the alleged negligent BUI investigation by the Town's officers. However, Florida law bars recovery under a negligence theory for an alleged negligent investigation. Finally, Town P.D. must be dismissed as a party defendant with prejudice because the Town P.D. is not a legal entity and does not have any legal existence separate and apart from the Town itself. Therefore, dismissal of Plaintiffs' complaint is warranted and Town P.D. must be dismissed as a party defendant with prejudice.

## II. Memorandum of Law

### A. Standard of Dismissal-Lack of Subject Matter Jurisdiction.

A complaint must be dismissed if the Court lacks jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). In order for a cause of action to be heard in federal court under maritime law, a two-

part test must be applied to determine whether the tort falls under general maritime law. *Rand v. Hatch*, 762 So. 2d 1001, 1002 (Fla. 3d DCA 2000). Under the first prong of the test, the court must determine if the tort occurred in navigable waters. Second, it must bear a significant relationship to a traditional maritime activity. *Id.* In *Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 252 (1972), the Supreme Court simplified this rule with a distinction: "If the wrong occurred on navigable waters, the action is within admiralty jurisdiction; if the wrong occurred on land, is it not." The Court in *Executive Jet Aviation* then discussed other examples of this rule: in a case where a longshoreman standing on a pier was knocked into the water, the cause of action was said to have accrued on land, and the Court held there was no maritime admiralty jurisdiction; whereas when a longshoreman was knocked off a vessel and onto the pier, the Court upheld admiralty jurisdiction because the cause of action arose on the vessel. *Id.* at 255 (comparing *Smith & Son v. Taylor*, 276 U.S. 179 (1928) with *Minnie v. Port Huron Terminal Co.*, 295 U.S. 647 (1935)).

The Court in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) further elaborated on this rule, stating that admiralty jurisdiction was to be available if the tort happened on navigable waters, or it was caused by a vessel on navigable waters. The traditional definition of "navigable waters" as used in this test requires that "the 'waters' be navigable in fact, or susceptible of being rendered so." *Rapanos v. United States*, 547 U.S. 715, 730 (2006)(citing *The Daniel Ball*, 77 U.S. 557, 563 (1870)).

Furthermore, to satisfy the second prong of the two-part test, the injury must also be substantially related to a traditional maritime activity. *See Sisson v. Ruby*, 497 U.S. 358, 362 (1990). The nexus test under *Sisson* asks whether the incident had a "potentially disruptive impact" on maritime commerce, and whether there was a "substantial relationship between the

3

activity giving rise to the incident and traditional maritime activity." *Bunge Corp v. Freeport Marine Repair, Inc.*, 240 F.3d 919, 924 (11th Cir. 2001).

### B.  Standard of Dismissal-Failure to State a Claim

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this does not require detailed allegations, the complaint must contain more than conclusory allegations, and contain sufficient factual matter, that when accepted as true, "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009).

When considering a motion to dismiss, the Court views the allegations of the complaint in a light most favorable to the Plaintiff. Fed. R. Civ. P. 12(b)(6); *Jackson v. Okaloosa Cnty.*, 21 F.3d 1531, 1534 (11th Cir. 1991). While factual allegations must be accepted as true, the court shall not accept conclusory allegations as true. *Gersten v. Rundle*, 833 F. Supp. 906, 910 (S.D. Fla. 1993). Bald assertions and conclusions of law will not defeat a properly supported motion to dismiss. *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

### C.  Town P.D. must be dismissed as a party defendant

Plaintiffs have erroneously named the Town P.D. as a party defendant in this matter. Town P.D. must be dismissed as a party defendant with prejudice because the Town P.D. is not a legal entity and does not have any legal existence separate and apart from the Town itself. *See Ball v. City of Coral Gables*, 548 F.Supp.2d 1364, 1369 (S.D. Fla. 2008)(granting the Coral Gables Police Department's Motion for Summary Judgment and holding that the Police Department could not be sued because it was not a separate entity from the city itself). *See also Florida City Police Dep't v. Corcoran*, 661 So. 2d 409, 410 (Fla. 3d DCA 1995)("Where a

police department is an integral part of the city government as the vehicle through which the city government fulfills its policing functions, it is not an entity subject to suit."); *Dean v. Barber,* 951 F.2d 1210, 1214-15 (11th Cir. 1992)(finding the Jefferson County Sheriff's Department was not a legal entity and holding that it was not subject to suit or liability).

### D. This Court lacks subject matter jurisdiction over the claim.

Plaintiffs' claim fails the locality test because the alleged tort did not occur on navigable waters, but rather, occurred after the vessel was pushed into the beach (i.e. land). *See Ex. A at ¶¶ 16, 23.*[2] Plaintiffs allege that Baker was navigating his vessel *M/Y Time Out* from the Bahamas to Palm Beach when he suffered an engine failure as he neared the Palm Beach Inlet. *Id.* at ¶ 14. Plaintiffs further allege that five to seven foot seas and high winds pushed the vessel *into the beach* in the Town bow first just on the south side of the Palm Beach Inlet jetty. *Id.* at ¶ 16. Plaintiffs then allege that Town's police arrived *at the beach* and arrested and charged Baker with boating under the influence (BUI) in violation of § 327.35(1), *Fla. Stat.. Id.* at ¶ 17. While Plaintiffs allege that the Town's officers removed Baker from the vessel and charged him with BUI (*Ex. A* at ¶ 26), Baker was already sitting on the beach with his girlfriend wearing wet clothing and life jackets when the Town's officers first encountered Baker. *See Composite Exhibit B, Officer La'Mont Lee's Incident Report and Officer Dean Morea's Supplemental Report.*[3]

---

[2] "[F]ive to seven foot seas and high winds pushed his vessel *into the beach* in the Town of Palm Beach bow first, just on the south side of the Palm Beach Inlet jetty." *Ex. A* at ¶ 16; "It was no longer possible to tow the vessel off the beach." *Ex. A* at ¶ 23.

[3] "A document outside of the four corners of the complaint may still be considered if it is central to the plaintiff's claims and undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs. Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). Because the Plaintiffs are alleging that the Town's police violated

Moreover, prior to the arrival of the Town's officers on scene, Baker already run the vessel aground in the shallow waters near the coastline and a towing company was on scene attempting to help Baker retrieve his identification and personal property from the vessel as it took on water. *Ex. B*, pp. 4, 9. Baker was escorted by Officer Lee from the beach—not the vessel—to the 100 block of E. inlet Drive to perform field sobriety exercises, which he failed, and, thus, Baker was placed under arrest for BUI. *Ex. B,* pp. 4-5. The Florida Fish and Wildlife Commission ("FWC") conducted a vessel accident investigation and informed the Town P.D. that it would handle the procedures of removing the vessel. *Ex. B*, p. 6; *See also Exhibit C, FWC Incident Summary Report*. The FWC gave Baker five days to remove his grounded vessel; however, Baker failed to do so and the FWC issued Baker a citation for violation of § 823.11(2), *Fla. Stat*.

It is clear that Plaintiffs' claim fails the first prong of the test because the alleged incident giving rise to the Plaintiffs' alleged damages (i.e. Baker's BUI arrest and the Town's alleged failure to remove the grounded vessel) did not occur on navigable waters. Plaintiffs' vessel had already been run aground by Baker prior to the encounter between Town's officers and Baker and prior to Baker's BUI arrest. There are no allegations that the Town's officers seized Plaintiffs' vessel while Baker was operating it on navigable waters. Plaintiffs' claim purportedly accrued as a result of the alleged negligence of the Town and Town P.D. in failing to remove the vessel *from the beach*. Clearly a beach does not fall under the definition of "navigable waters". *See Rapanos, supra.* Plaintiffs do not assert any other cause of action stemming from the navigation of the ship while it was on open waters. The alleged injury itself was not caused by the navigation of the vessel offshore, but rather the Town's and Town's officers' alleged

---

internal policy by failing to tow the vessel from the beach, the police report is central to the Plaintiff's Complaint and should be considered by the Court in this matter.

negligence in purportedly not removing the vessel which had been run aground by Baker. On this basis alone, Plaintiffs' claim must be dismissed.

Further, Plaintiffs' claim fails the nexus test in *Sisson* as Plaintiffs have failed to allege sufficient facts showing how the alleged incident had a potentially disruptive impact on maritime commerce and that there was a "substantial relationship between the activity giving rise to the incident and traditional maritime activity." *See Sisson, Bunge Corp., supra.* Plaintiffs merely allege that "[n]avigating a vessel upon the navigable waters of the United States is a traditional maritime activity" (*Ex. A* at ¶ 11); however, the alleged incident (i.e., the BUI investigation by Town officers) did not occur while Baker was navigating his vessel on navigable waters. Plaintiffs also allege that "[p]ulling the operator off a vessel and leaving it unattended has the potential to disrupt maritime commerce." *Ex. A* at ¶ 12. In support of this allegation, Plaintiffs cite to *Foremost Ins. Co. v. Richardson*, 457 U.S. 668 (1982), *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), and *Sisson*. However, none of these cases stand for this proposition.

*Richardson* involved an action to recover for the death of an occupant of a pleasure boat resulting from a collision with another pleasure boat on a river. *Richardson*, 457 U.S. at 669. *Jerome B. Grubart, Inc.* involved an action against Great Lakes Dredge & Dock Co. and the City of Chicago after the Chicago River flooded a freight tunnel under the river and basements of numerous buildings. *Jerome B. Grubart, Inc.,* 513 U.S at 529. In *Sisson*, the owner of a pleasure yacht brought suit to limit his liability for a fire which destroyed a moored yacht and damaged a marina and other boats. *Sisson,* 497 U.S. at 360. Clearly, none of these cases support Plaintiffs' baseless allegation. Furthermore, Baker was never pulled off his vessel by the Town or the

Town's officers. As stated *supra*, Baker was already sitting on the beach when the Town's officers first made contact with him. *Ex. B*.

While Plaintiffs make the conclusory allegation that "[t]his matter involves a vessel on navigable waters…bears a substantial relationship to a traditional maritime activity and has the potential to disrupt maritime commerce," (*Ex. A* at ¶ 13), this Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Based on the foregoing, this Court lacks subject matter jurisdiction over Plaintiffs' complaint and, thus, dismissal is warranted.

### E.  Under Traditional Tort Law, the Town had no duty of care.

Under maritime law, Plaintiffs cannot establish that the Town owed them a duty of care. "'General maritime law incorporates the general law of torts when not inconsistent with the law of admiralty.'" *Hoefling v. City of Miami*, 876 F.Supp.2d 1321, 1333 (S.D. Fla. 2012) (citing *Harrison v. Flota Mercante v. Grancolombiana, S.A.,* 577 F.2d 968, 977 (5th Cir. 1978). The elements of a maritime negligence claim are the same as those for common law negligence: (1) a duty recognized by the law requiring a standard of protection of others against unreasonable risks; (2) a breach of that duty, (3) causation between the breach of that duty and the injury, and (4) actual loss or damages. *Id. See also Stuart Cay Marina v. M/V Special Delivery*, 510 F.Supp.2d 1063, 1071 (S.D. Fla. 2007) (holding that a plaintiff must establish that the defendant owed a duty to the plaintiff).

In *Hoefling*, the plaintiff sued the City of Miami, alleging, among other claims, that the city and its law enforcement officers had a duty to protect the plaintiff's boat. *Hoefling,* 876 F.Supp.2d at 1333-34. The district court there held that the plaintiff had not, and the court was not aware of, any case stating that, under maritime law, law enforcement officers owe a duty of

care to an individual member of the public with respect to the enforcement of the law. *Id.* at 1334. *Id.* The court then noted that even under Florida law, which the court may apply in the absence of maritime law, "there is no common law duty of care owed to an individual with respect to the discretionary judgmental power granted a police officer…to enforce the law." *Id.* at 1334 n.16 (citing *Steelmet, Inc. v. Caribe Towing Corp.*, 779 F.2d 1485, 1488 (11th Cir. 1986)). The district court dismissed the plaintiff's tort claims under Rule 12(b)(6). *Id.* at 1334.

Florida law is clear that there is no duty of care owed to an individual with respect to the discretionary judgment power granted to a police officer to enforce the law. *Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 888 (11th Cir. 2007). In *Albra*, the Eleventh Circuit held that police officers were immune from an action for negligent investigation. *Id. See also Everton v. Willard*[4], 468 So. 2d 936, 938-39 (Fla. 1985) (holding that the decision whether or not to arrest an intoxicated driver was a matter of discretion, inherent in enforcing the laws of the State, and that without a special duty to the victim, there is no common law duty of care to the individual citizen); *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 934 (Fla. 2004) (comparing cases in which entities control an instrumentality, to those in which they do not, and thus lack a duty of care). In *Pollock*, the Court noted that the Florida Highway Patrol lacked ownership or control over Florida's highways and therefore lacked a duty of care to motorists in the

---

[4] "If a governmental entity is going to be held liable for the negligent discretionary, judgmental decisions made by its police officers in enforcing the law, this means of accountability by tort liability should be imposed by the elected representatives in the legislative branch who may create this new duty of care and place this fiscal responsibility on the governmental entity and its taxpayers, rather than having the judiciary establish this new duty by judicial fiat." *Everton,* 468 So. 2d at 939. *See also Trianon Park Condominium Association, Inc. v. City of Hialeah*, 468 So.2d 912 (Fla. 1985); *City of Orlando v. Kazarian*, 481 So. 2d 506 (Fla. 5th DCA 1985)(negligent investigation of the ownership of the tractor does not give rise to a cause of action).

maintenance of the roads. *Id.*[5] The Court therefore held that the FHP was not liable for the deaths of two motorists, the result of the FHP's failure to remove a stalled tractor-trailer from the highway, after a report was dispatched that the tractor-trailer was dangerous because it was in a poorly-lit area, and that several motorists had to take evasive action to avoid a collision. *Id.*

As in *Hoefling,* Plaintiffs assert that the Town and Town P.D. had a duty to protect Plaintiffs' property and that they breached their duty by failing to have the vessel towed and impounded after placing Baker under arrest for BUI. *Ex. A* at ¶¶ 26-28. As in *Hoefling*, Plaintiffs' claims against the Town and Town P.D. fail as a matter of law because the Town's officers did not owe Plaintiffs any duty of care with respect to the discretionary judgment power granted to the Town's officers to enforce the law.

Moreover, Plaintiffs have failed to allege a claim for negligence pursuant to the "undertaker doctrine" and, based on the four corners of Plaintiffs' complaint, the "undertaker doctrine" is inapplicable to this case.

Section 324A of the Restatement sets forth the following standard for assessing liability in cases involving the undertaker doctrine:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for **physical** harm resulting from his failure to exercise reasonable care to protect his undertaking if:
>
> (a) His failure to exercise reasonable care increases the risk of such harm, or
> (b) He has undertaken to perform a duty owed by the other to the third person, or
> (c) The harm is suffered because of reliance of the other or the third person upon the undertaking.

---

[5] The Court also listed situations where police may have a special duty, such as when police caused a woman to forego attempts at searching for her husband in reliance on the word of a local sheriff (*Hartley v. Floyd*, 512 So. 2d 1022 (Fla. 4th DCA 1987)), or when a police officer detained a motorist who was injured when he was struck from behind by another vehicle. (*Kaisner v. Kolb*, 543 So. 2d 732, 734 (Fla. 1989)).

(Emphasis added). *Restatement (Second) of Torts § 324A(1965).*

Clearly, the "undertaker doctrine" applies in cases involving **physical** harm. Plaintiffs fail to allege anywhere in their complaint that Baker suffered any physical harm as a result of his BUI arrest. Furthermore, the allegations contained within Plaintiffs' complaint fail to establish that the Town's officers undertook, gratuitously or for consideration, to render any service to Plaintiffs or any other person when they conducted their investigation and arrested Baker for BUI. Therefore, Plaintiffs' complaint fails to state a cause of action for negligence against Town or Town P.D. pursuant the "undertaker doctrine."  As such, dismissal of Plaintiffs' complaint is warranted.

### F.  An internal policy does not create a duty of care.

Moreover, the complaint alleges that the presence of "generally accepted policies, procedures, and practices exercised by law enforcement" created a duty for the Town and Town P.D. to act reasonably and protect Plaintiffs' property. *See Ex. A at ¶19-21, 27-28.* This is contrary to the prevailing law in Florida and across the United States. *In Pollock*, the Court held that the FHP's internal operating procedures and practices did not impose a duty to dispatch officers to the scene of the tractor-trailer, concluding that "written agency protocols, procedures and manuals do not create an independent duty of care." *Pollock*, 882 So. 2d at 936. While a policy or manual may be instructive in determining whether there was an independently established duty of care, it cannot itself establish a duty of care to individual members of the public. *Id.* at 937. This principle is consistent with the Florida Fourth District Court of Appeal's analysis in *Mayo v. Publix Super Markets*. In *Mayo*, the plaintiff sought to introduce evidence of the store manager's procedures manual to demonstrate what was reasonable care, in a slip-and-fall case where the plaintiff sustained injuries when he fell off of the store's scale. *Mayo v.*

11

*Publix Super Markets*, 686 So. 2d 801, 802 (Fla. 4th DCA 1997). The court found that the plaintiff did not sustain his burden in proving the relevancy of the manual[6]. *Id.* Moreover, it held that even if the manual was relevant, the trial court should have instructed that the manuals were merely evidentiary and not a legal standard. *Id.*

Based on this well-established law, it is quite clear that the Town did not owe a duty of care to the Plaintiffs. First, the Town did not have control over the ocean or shoreline, like a municipality would have control over repairing their roads. *See Pollock, supra*, at 934. Next, according to established principles, the Town has no common law duty of care towards the Plaintiffs, individually. They lack a special relationship to the Plaintiffs that would establish such a duty. Moreover, while the policies of the Fish and Wildlife Commission and the Florida Highway Patrol might be instructive, they do not establish a duty of care or create a situation where *negligence per se* would be applicable. *See Pollock; Mayo, supra.*[7] Furthermore, the policy manuals of the FWC and FHP are state agencies and not effective or binding on the Town, whatsoever. Simply put, there is no affirmative duty for law enforcement to take affirmative actions to protect an individual's property from harm. *See Hoefling, supra,* at 1334. This case

---

[6] The Court held: "Let me tell you what I think public policy-wise. We want K-Mart and Publix and Burger King and all those places to have internal policies that assure the highest standard of public safety. And God forbid that there be jury instructions that, hey, if you fail to wash your hands or something like that the jury can consider it in evidence against you. In other words, these retail establishments being held to a higher standard than the reasonable man standard. But by the same token it seems to me that if they enunciate these policies in some kind of a procedures manual, personnel manuals, safety manuals, but the public policy requires that they not be hammered with those things because they will simply erase them. Right? They will have no polices to assure public safety because it would then hold them to a higher standard.... I'm granting that you may not refer to the internal rules of, in this case Publix, to fix the standard of care." *Mayo*, 686 So. 2d at 802.

[7] *See also DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189 (1989), where the United States Supreme Court held that there was no affirmative duty for a state to step in and protect a young child from being savagely beaten by his father, despite several warnings that the father was a continuing danger to the child.

bears striking similarities to *Hoefling*. In both circumstances, law enforcement was put in the unenviable position of dealing with a vessel in a derelict condition. In *Hoefling*, despite the plaintiff's assertions that there was a duty of care to the owner of a derelict vessel, the district court dismissed the tort claims for failure to state a claim. *Id.* The same should be done here.

### G.  Plaintiffs have failed to comply with §768.28, Florida Statutes

Section 768.28, Florida Statutes is the Florida Legislature's waiver of sovereign immunity, in accordance with the Federal Constitution and Article X of the Florida Constitution. §768.28(1), Fla. Stat. provides that suit may be brought against the State and its subdivisions, but only to the extent specified in the statute. Strict compliance with the notice requirement is necessary in order to maintain an action against the state, or its agencies and subdivisions. See *Osten v. City of Homestead*, 757 So. 2d 1243, 1244 (Fla. 3d DCA 2000).

Under §768.28(6)(a), suit may be brought if the action is brought within 3 years of the claim accruing, and the appropriate agency denies the claim in writing. §768.28(d) provides that the failure of such an agency to make a final disposition of the claim within 6 months shall be deemed a final denial of the claim. In other words, unless the claimant receives a denial in writing, 6 months must elapse prior to bringing suit under §768.28. Such notice must be given before a suit may be maintained, and the complaint must contain an allegation of such notice. *See Wagatha v. City of Satellite Beach*, 865 So. 2d 620, 622 (Fla. 5th DCA 2004). Compliance with the statute is a condition precedent to bringing suit, and the appropriate remedy for failure to comply is dismissal of the suit. *Menendez v. North Broward Hosp. Dist.*, 537 So. 2d 89, 91 (Fla. 1988).

In this matter, Plaintiffs allege that they have complied with the pre-suit notice requirements of § 768.28, Florida Statutes. *Ex. A* at ¶ 24. Plaintiffs attach a copy of their 768.28

notice as "Exhibit 3" to their complaint, which is dated September 20, 2016. *Ex. A* at "Exhibit 3". Plaintiffs filed suit only one month later on October 20, 2016, which is clearly before the expiration of the 6-month statutory period. Additionally, Plaintiffs did not attach a written denial to their complaint. Therefore, Plaintiffs' lawsuit should be dismissed as it is premature and for failure to comply with the mandatory pre-suit requirements of § 768.28.

WHEREFORE, Defendants, TOWN OF PALM BEACH and TOWN OF PALM BEACH POLICE DEPARTMENT, respectfully request that this Honorable Court enter an Order dismissing Plaintiffs' Complaint, dismissing the Town of Palm Beach Police Department as a party defendant, and granting all other relief deemed just and proper. Defendant, Town of Palm Beach, further reserves the right to file a separate counterclaim against Plaintiffs for restitution for the cost of removal of the Plaintiffs' vessel and restoration of the Town of Palm Beach's property.

      Respectfully submitted,

      /s/Lyman H. Reynolds, Jr.
      **LYMAN H. REYNOLDS, JR.**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy hereof has been furnished by CM/ECF to all parties on the attached Counsel List this 9th day of November, 2016.

> **ROBERTS, REYNOLDS, BEDARD & TUZZIO, PLLC**
> 470 Columbia Drive, Bldg. C101
> West Palm Beach, FL  33409
> Phone: 561-688-6560/Fax: 561-688-2343
> E-Service: service_LHR@rrbpa.com
> Email: lreynolds@rrbpa.com
> Attorneys for Defendant
>
>
> /s/Lyman H. Reynolds, Jr.
> LYMAN H. REYNOLDS, JR.
> Florida Bar No: 380687

STYLE: BAKER v. TOWN OF PALM BEACH
CASE NO.: PRE-SUIT
OUR FILE NO.: 16-385

# COUNSEL LIST

JOANNE M. FOSTER
Guy Yudin & Foster, LLP
55 E. Ocean Blvd.
Stuart, FL 34994
Counsel for Plaintiffs
PHONE: 772-286-7372 x-207
FAX: 772-220-3318
EMAIL: jfoster@guyyudinlaw.com
FBN: 134635

LYMAN H. REYNOLDS, JR., ESQ.
Roberts, Reynolds, Bedard & Tuzzio, PLLC
470 Columbia Dr., Bldg. C101
West Palm Beach, FL  33409
Counsel for Defendant
PHONE: 561-688-6560
FAX: 561-688-2343
E-SERVICE: service_LHR@rrbpa.com
EMAIL: lreynolds@rrbpa.com
           bsmith@rrbpa.com
FBN: 380687