UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION
Case No.: 9:16-CV-81771 - KAM / Matthewman
IN ADMIRALTY

THOMAS HENRY BAKER, and
BLUE WATER ENTERPRISES, INC.,

    Plaintiffs,

v.

TOWN OF PALM BEACH, FLORIDA, and the
TOWN OF PALM BEACH POLICE DEPARTMENT,

    Defendants.

_____/

## AMENDED COMPLAINT

COMES NOW the Plaintiff, BLUE WATERS ENTERPRISE, INC., by and through undersigned counsel, and hereby sues the TOWN OF PALM BEACH, FLORIDA, and the TOWN OF PALM BEACH POLICE DEPARTMENT and states as follows:

1. This is an action for damages.

2. This is an Admiralty and Maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is within the Admiralty subject matter jurisdiction of this Court based upon 28 U.S.C. §1333, and the U.S. Constitution, Article III, Section 2.

**PARTIES**

3. BLUE WATER ENTERPRISES, INC., (hereafter Blue Water) is a corporation which owns the vessel, *M/Y Time Out*, a 1989 80' Hatteras Motoryacht, official number 946053. The hailing port for the yacht is Port Canaveral.

4.  The Town of Palm Beach is a municipality incorporated in 1911; it is located within Palm Beach County, Florida, and therefore within the jurisdiction of this Court. The Town of Palm Beach operates on a Town Council/ City Manager form of government.

5.  The council consists of a mayor and five council members who serve as the policy-making body for the Town of Palm Beach.

6.  The Town of Palm Beach Police Department is a department of the Town of Palm Beach.

## ADMIRALTY JURISDICTION

### *LOCATION*

7.  The Town of Palm Beach is a community located on the far eastern side of Palm Beach County, Florida, with more than 10 miles of beach front on the navigable waters of the Atlantic Ocean.

8.  The incident which is the subject matter of this Complaint occurred on the navigable waters of the United States within the Town of Palm Beach.

### *SUBSTANTIAL RELATIONSHIP TO TRADITIONAL MARITIME ACTIVITY*

9.  At all relevant times, the *M/Y Time Out* was a vessel in navigation. It was an artificial contrivance that was capable of being used, and was in fact used, as a means of transportation on water.  See 1 U.S.C. § 3.  It was not merely "practically capable of maritime transportation, Stewart v Dutra Construction, Co., 543 U.S. 481, 497, 125 S. Ct. 1118, 160 L. Ed. 2d 932 (2005), it was actually capable of such use and was so used.  A reasonable observer, looking to the physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." Lozman v. City of Riviera Beach, Fla., 133 S. Ct. 735, 741, 133 S. Ct. 735, 184 L. Ed. 2d 604 (2013).

10. Navigating a vessel upon the navigable waters of the United States is a traditional maritime activity.  See: Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 540 (1995) ("Navigation of boats in navigable waters clearly falls within the substantial relationship ... "); Foremost Ins. Co. v. Richardson, 457 U.S. 668 (1982); Sisson V. Ruby, 497 U.S. 358, 362 (1990).

11. Pulling the operator off a vessel and leaving it unattended has the potential to disrupt maritime commerce.  The vessel could have broken loose and drifted into the Port of Palm Beach entrance channel or otherwise created a hazard to navigation.  See Foremost Ins. Co. v. Richardson, 457 U.S. 675, (1982); Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 533 (1995); Sisson v. Ruby, 497 U.S. 362 (1990).

12. This matter involves a vessel on navigable waters.  It bears a substantial relationship to a traditional maritime activity and has the potential to disrupt maritime commerce.  As such, this matter is within the scope of admiralty jurisdiction of the District Court.

**FACTS**

13. In the early morning of September 7, 2016, Thomas Henry Baker was navigating the *M/Y Time Out* from West End in the Bahamas to Palm Beach, Florida, when he suffered an engine failure as he neared the Palm Beach Inlet.

14. Baker called "mayday" seeking assistance and attempted to anchor the vessel about a half-mile off shore from the Town of Palm Beach.

15. Unfortunately before he could receive assistance from a towing company, five to seven foot seas and high winds pushed the vessel into the beach in the Town of Palm Beach bow first, just on the south side of the Palm Beach Inlet jetty.

16. Town of Palm Beach police arrived at the beach and arrested Baker, charging him with boating under the influence (BUI) in violation of section 327.35(1) Fla. Stat. (2016).

17. Plaintiff Baker asked the police for the opportunity to make arrangements to secure the vessel.  His request was denied.  The *M/Y Time Out* was left floundering in rough surf and high winds.

18. In violation of generally accepted polices, procedures and practices exercised by law enforcement statewide in Florida, the Town of Palm Beach police failed to make arrangements to tow and impound the *M/Y Time Out*.

19. The Florida Fish and Wildlife Conservation Commission General Order 09 states:

    1 Policy

    B It is the policy of the FWC Division of Law Enforcement to Establish procedures for the towing/impoundment of vehicles and vessels in order to:
    (1) ***Protect the property of arrested individuals upon incarceration***. (Emphasis added.)

    3 Procedures

    A Vehicles and Vessels
    (1) Vehicles and Vessels ***shall be towed and impounded*** for the following reasons: (Emphasis added)

    (e) If the driver/orperator has been arrested for DUI/BUI and no other licensed driver/operator is available.  (Exhibit 1)

20. The Florida Highway Patrol Policy Manual , Vehicle Towing and Impoundment Policy 11.04 states:

    11.04.03 Objectives

    A. ***To protect the property of arrested individuals upon incarceration***. (Emphasis added.)

    11.04.02 Policy

GUY YUDIN & FOSTER, LLP
55 East Ocean Blvd, Stuart FL 34994 772-286-7372 772-220-3318 fax

> It is the policy of the Florida Highway Patrol to Provide procedures for the towing, impoundment and storage of vehicles.
>
> 11.04.04 Procedures
>
> A. Vehicles **shall be towed and impounded** in the following situations:
>    5. If the driver has been arrested for Driving Under the Influence and no other licensed driver is available. (Exhibit 2) (Emphasis added.)

21. Being unsecured and unattended, the vessel completely turned about in the rough seas and wind and within a few hours was astern to the shore taking on water and sand.

22. When Baker returned to the vessel he was advised by the local towing and salvage companies it was no longer possible to tow the vessel off the beach.

23. In accordance with section 768.28, Florida statutes (2016), notice of this law suit has been given to the Town of Palm Beach and the Town of Palm Beach Police Department. (Exhibit 3)

## COUNT I - NEGLIGENCE

24. Plaintiff realleges and incorporate paragraphs 1 - 23 as though fully set forth herein.

25. On September 7, 2016, Town of Palm Beach Police arrested Thomas Henry Baker and removed him from the vessel, *M/Y Time Out*, charging him with BUI.

26. In accordance with generally accepted polices, procedures and practices exercised by law enforcement statewide in Florida, Defendants Town of Palm Beach and Town of Palm Beach Police Department, had a duty to protect Plaintiffs' property and to have Plaintiffs' vessel towed and impounded.

27. Defendants, Town of Palm Beach and Town of Palm Beach Police Department, breached their duty to Plaintiffs when they failed to make arrangements to protect the *M/Y Time Out* and have it towed and impounded in accordance with generally accepted polices, procedures and practices exercised by law enforcement statewide in Florida.

28. Defendants further breached their duty to Plaintiffs and violated section 823.11, Florida Statutes (2015), when they left or abandoned the *M/Y Time Out* in a wrecked condition upon any public waters of this state. Violation of section 823.11 is a first degree misdemeanor.

29. As a direct result of the negligence and potentially criminal actions of the Town of Palm Beach and the Town of Palm Beach Police Department, Plaintiff's vessel was destroyed.

WHEREFORE, Plaintiff demands judgement for damages in their favor for the value of the vessel *M/Y Time Out* in excess of $450,000.00, and for all other relief this Court deems just and proper.

## BENCH TRIAL

In accordance with general maritime law, Plaintiff demands a bench trial for the hearing of this matter.

Respectfully submitted this _3rd_ day of January, 2017.

>  *s/ Joanne M. Foster*
>  _____
>  Joanne M. Foster, FBN 134635
>  Guy Yudin & Foster, LLP
>  55 East Ocean Blvd.
>  Stuart FL 34994
>  772-286-7372 x207
>  772-220-3318 (fax)
>  jfoster@guyyudinlaw.com
>  *Attorney for Plaintiffs*

**CM/ECF SERVICE LIST**

Joanne Foster, Esquire
Guy Yudin & Foster, LLP
55 East Ocean Blvd.
Stuart, FL 34994
Telephone: (772) 286-7372
Facsimile: (772) 220-3318
jfoster@guyyudinlaw.com
*Counsel for Plaintiffs*

Lyman H Reynolds, Jr.
Roberts, Reynolds, Bedard & Tuzzio, PLLC
470 Columbia Drive, Bldg. C101
West Palm Beach, FL 33409
Phone: 561-688-6560
Fax: 561-688-2343
service_LHR@rrbpa.com
lreynolds@rrbpa.com
*Counsel for Defendants*