UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-81771-CIV-MARRA/MATTHEWMAN

BLUE WATER ENTERPRISES, INC.,

        Plaintiff,

v.

TOWN OF PALM BEACH, FLORIDA, and the
TOWN OF PALM BEACH POLICE DEPARTMENT,

        Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendants Town of Palm Beach and Town of Palm Beach Police Department's Motion to Dismiss Plaintiffs' Verified Complaint [DE 9].[1] The Court has reviewed all papers submitted in connection with the motions, the entire file, and is otherwise duly advised in the premises. These motions are ripe for the Court's consideration.

## BACKGROUND FACTS

The Verified Complaint in this action sets forth the following alleged facts. Plaintiff Blue Water Enterprises, Inc. is the owner of the *M/Y Time Out*. [DE 1 at ¶ 4]. On September 7, 2016, Thomas Henry Baker was navigating the *M/Y Time Out* from the Bahamas to Palm Beach, Florida when he suffered an engine failure as he neared the Palm Beach Inlet. [DE 1 at ¶14]. He called "mayday" seeking assistance and attempted to anchor his vessel about a half-mile off

---

[1] The motion was brought against Plaintiffs Thomas Henry Baker and Blue Water Enterprises, Inc. Subsequent thereto, the Court granted Plaintiffs' request to drop Mr. Baker as a Plaintiff. [DE 24]. The motion continues as against Blue Water Enterprises, Inc.

shore from the Town of Palm Beach. [*Id*. at ¶15]. Before help could arrive, five to seven foot seas and high winds pushed his vessel into the beach bow first in the Town of Palm Beach, just on the south side of the Palm Beach Inlet jetty. [*Id*. at ¶16].

Town of Palm Beach police arrived and arrested Mr. Baker, charging him with boating under the influence. [*Id*. at ¶17]. Mr. Baker asked the police for the opportunity to make arrangements to secure his vessel, but this request was denied. The vessel was left floundering in rough surf and high winds. [*Id*. at ¶18]. Being unsecured and unattended, the vessel completely turned about in the rough seas and wind and within a few hours was astern to the shore taking on water and sand. [*Id*. at ¶22]. When Mr. Baker returned to the vessel, he was advised by the local towing and salvage companies that it was no longer possible to tow the vessel off the beach. [*Id*. at ¶23].

The Verified Complaint alleges a claim for damages arising out of the failure of the Defendants to protect the vessel after Mr. Baker was arrested. [DE 1]. Plaintiff alleged that the incident at issue occurred on the navigable waters of the United States, and that it bears a substantial relationship to a traditional maritime activity and has the potential to disrupt maritime commerce. As such, Plaintiff alleges that this case falls within the Court's admiralty jurisdiction. [*Id.*].

## POSITIONS OF THE PARTIES

Defendants move to dismiss the Verified Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Rule 12(b)(6). They allege that there is no maritime jurisdiction, because the alleged incident did not occur on navigable waters, rather, it occurred on the beach. [DE 9 at 2]. They state that Plaintiffs have asserted a

claim under Florida's "undertaker's doctrine," which they argue fails here as Plaintiff has not pled physical harm. They argue that Plaintiff's claims are based upon the allegedly negligent investigation by the Town's officers, which claims are barred by Florida law. Defendants state that the Police Department must be dismissed, because it is not a distinct legal entity. [*Id*.]. Finally, Defendants argue that this action is premature for failing to comply with the waiver of sovereign immunity rules set forth in Fla. Stat. §768.28. [DE 9 at 13].

In response, Plaintiff argues that this case falls within the Court's admiralty jurisdiction [DE 10 at 2-5]; that Defendants have not provided any legal authority demonstrating that the Police Department is not a legal entity separate from the Town; that it is not relying upon Florida's undertaker's doctrine [*Id*. at 5-6]; that Plaintiff is not accusing Defendants of violation of their discretionary judgment in making an arrest, or of negligent investigation [*Id*. at 6]; and that Fla. Stat. 768.28 does not apply [*Id*. at 9-10].

In reply, Defendants reiterate that Plaintiff's case fails the two-pronged test for admiralty jurisdiction [DE 11 at 2]; that Plaintiff has not established that a duty of care exists on the facts set forth in the Complaint [*Id*. at 5-10]; and that the Town Police Department is not a separate entity from the Town [*Id*. at 10].

## LEGAL STANDARDS

### Motion to Dismiss for Lack of Subject Matter Jurisdiction

As the Eleventh Circuit explained in *Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990),

> Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms. "Facial attacks" on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction,

3

> and the allegations in his complaint are taken as true for the purposes of the motion." . . . "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."

*Id*. at 1528-29 (Citations Omitted). Defendants argue that this case presents a situation where the attack on subject matter jurisdiction is factual; so, no presumption of truthfulness attaches to Plaintiff's allegations [DE 11 at 2].

## **Motion to Dismiss for Failure to State a Claim**

With respect to the motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court observes first that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has held that "[w]hile a complaint attacked by a 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). As a general rule, the Court must "limit[] its consideration to the pleadings and exhibits attached thereto" when deciding a Rule 12(b)(6) motion to dismiss. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)(internal quotation marks and citation omitted).

## DISCUSSION

### The Court Has Subject Matter Jurisdiction in Admiralty Over This Case

The Supreme Court in *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), outlined the test that a court applies to determine whether it has subject matter jurisdiction in admiralty over a tort.

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. . . . The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," . . . to determine whether the incident has " a potentially disruptive impact on maritime commerce," . . . . Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." . . . .

*Id*. at 534. (Citations omitted).

Defendants argue that Plaintiff has failed the location test, because the tort occurred after the vessel was pushed into the beach. [DE 9 at 5]. They argue that "a beach does not fall under the definition of navigable water." [*Id*. at 6]. While this argument has superficial appeal, it is

5

incorrect both legally and factually.

As noted in SCHOENBAUM, ADMIRALTY & MARITIME LAW § 3.3 (5th ed. 11/16 update): "The traditional domain of admiralty jurisdiction is, of course, the sea, including waters within the ebb and flow of the tide." *See Hassinger v Tideland Elec. Membership Corp.,* 781 F.2d 1022 (4th Cir. 1986)(holding that admiralty jurisdiction extends at all times in tidal areas to the mean high water mark).

Although Defendants are accurate that the Complaint alleges that the vessel was pushed into the beach, the Complaint never alleges that the vessel was entirely beyond the mean high water mark. In fact, the Complaint states to the contrary, when it alleges that the vessel "was left floundering in rough surf . . . ." [DE 1 at ¶ 18], and "[b]eing unsecured and unattended, the vessel completely turned about in the rough seas and wind and within a few hours was astern to the shore taking on water and sand." [*Id*. at ¶ 22].

In discussing the location of the vessel, Defendants ask the Court to consider the police reports and the report of the Florida Fish and Wildlife Conservation Commission in their moving papers. They argue that even though these documents are outside the four corners of the complaint, they can be considered as central to Plaintiff's claims and undisputed in terms of authenticity. [DE 9 at 5, ftn 3].

The Court need not address this argument, because the Court can consider these documents as part of the factual attack on subject matter jurisdiction. Although unnecessary to do so in light of the specific allegations in the Complaint discussed *supra*, these documents actually support Plaintiff's position. The Reporting Officer Narrative states that the yacht "appeared to have run aground **approximately 15 yards off shore** . . . ." [DE 9-2 at 4 (bold

6

emphasis added)]. A vessel that is "off shore" is not "on the beach" or beyond the mean high water mark. This Report also notes that "Baker and Shaffer did manage to reboard the vessel and gather some personal property prior to the vessel becoming unsafe to board again **as it took on water**." [*Id*. at 4 (bold emphasis added)]. Obviously, the vessel could not have taken on water if it was not in the water.

The Incident Summary Report of the Florida Fish and Wildlife Conservation Commission notes that by 9/13/16, "the vessel had rolled completely onto its port side and was resting on the sea bottom in approximately 6 feet of water." [DE 9-3 at 2]. Pictures attached to this Report show the vessel in the water. [*Id*. at 4-6]. The Commission cited Mr. Baker for having left "a derelict vessel on the waters of the state." [*Id*. at 8].

The Defendants do not dispute the facts stated in these documents. They note that prior to the arrival of the Town's officers, Baker had "already run the vessel aground **in the shallow waters near the coastline** . . . ." [DE 9 at 6]. Therefore, Defendants concede that the vessel was in shallow water. Defendants simply misconstrue the legal implications of the vessel having been in shallow water. Such water is considered "navigable" for purposes of admiralty jurisdiction.

The Court finds, therefore, that Plaintiff's Complaint satisfies the location test for admiralty jurisdiction.

Defendants next argue that Plaintiff has not met the connection test, because the incident did not have a potentially disruptive impact on maritime commerce, nor was there a substantial relationship to traditional maritime activity. [DE 9 at 7]. Plaintiff responds that Defendants' actions left a vessel floundering in shallow water just south of the Palm Beach Inlet. Plaintiff notes that clearly there was the potential to disrupt maritime commerce. [DE 10 at 3].

The Court finds that the Complaint contains sufficient facts to satisfy the connection test for determining maritime jurisdiction. The Complaint asserts that when the vessel was grounded, it was "just on the south side of the Palm Beach Inlet jetty." [DE 1 at ¶ 16]. Defendants' moving papers concede as much when they append the police report, which states that the vessel was "approximately 100 yards south of the Palm Beach Inlet." [DE 9-2 at 4]. The Complaint alleges that Mr. Baker asked the police for the opportunity to make arrangements to secure his vessel, and that this request was denied. The vessel was left floundering in rough surf and high winds [*Id*. At ¶ 18].

Based upon these alleged facts, the Court finds that the incident had a potentially disruptive impact on maritime commerce, and the general character of the activity that gave rise to the incident shows a substantial relationship to traditional maritime activity. The abandoned vessel potentially could have interfered with traffic in and out of the nearby Port. A disabled vessel running aground in shallow water, and the impact on commerce of leaving the vessel abandoned in that condition, is substantially related to traditional maritime activity.

The Court, therefore, finds that it has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1333. Having determined that it has jurisdiction, the Court will now address the portion of Defendants' motion arguing that the Complaint fails to state a claim against them.

**<u>Plaintiff's Complaint States a Claim For Which Relief Could be Granted</u>**

In evaluating this portion of Defendants' Motion to Dismiss, the Court must accept all of Plaintiff's allegations as true in determining whether it has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). As a general rule, the Court must "limit[] its consideration to the pleadings and exhibits attached thereto" when deciding a Rule

12(b)(6) motion to dismiss. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)(internal quotation marks and citation omitted).

Defendants have appended to their motion papers documents beyond the four corners of the Complaint and exhibits attached thereto. While the Court took those documents into account in conducting its factual based inquiry into its subject matter jurisdiction to hear this case, it cannot do so in connection with this portion of Defendants' motion. The Court does not agree with Defendants' analysis that the Court can consider these documents as central to Plaintiff's claims. [DE 9 at 5, n. 3].

The salient facts at issue as set forth in Plaintiff's Verified Complaint are as follows:

> 18. Plaintiff Baker asked the police for the opportunity to make arrangements to secure his vessel. His request was denied. The *M/Y Time Out* was left floundering in rough surf and high winds.
>
> 19. In violation of generally accepted policies, procedures and practices exercised by law enforcement statewide in Florida, the Town of Palm Beach police failed to make arrangements to tow and impound the *M/Y Time Out*.

[DE 1 at 4].

From these facts, Plaintiff alleges that Defendants had a duty to protect Plaintiff's property and have the vessel towed; that Defendants breached this duty when they failed to make arrangements to protect the vessel and have it towed; and that Defendants further breached their duty and violated Fla. Stat. Sec. 823.11.[2]

Appended to the Complaint are the Florida Fish and Wildlife Conservation Commission General Orders Manual, which authorizes its sworn members to impound and store vessels, and

---

[2]No Party has discussed the allegation under section 823.11. The Court, therefore, does not address it here.

the Florida Highway Patrol Policy Manual providing rules applicable to the towing and impoundment of vehicles by the Florida Highway Patrol. [DE 1 at 8-17]. The Court does not comment on whether or to what extent these documents can be used in the future litigation of this case. The Court has not taken them into account in its evaluation of whether the Complaint states a claim.

"In admiralty the duty of care may be derived from three basic sources: (1) duly enacted laws, regulations, and rules; (2) custom; and (3) the dictates of reasonableness and prudence." SCHOENBAUM, ADMIRALTY & MARITIME LAW § 5.2 (5th ed. 11/16 update)(citations omitted). Here, the Complaint adequately alleges that custom and the dictates of reasonableness and prudence created a duty on the part of the Defendants.

Defendants rely heavily upon *Hoefling v. City of Miami*, 17 F. Supp.3d 1227 (S.D. Fla. 2014), *aff'd in part, rev'd in part, and remanded for further proceedings*, 811 F.3d 1271 (11th Cir. 2016). The lower court in *Hoefling* held that in the absence of any cases under maritime law stating that police officers owe a duty of care to an individual member of the public with respect to the enforcement of the law, Florida law precluding such a claim controlled. 17 F. Supp.3d at 1241.

This Court does not agree that the absence of a maritime case on point necessarily requires the application of state law. Nevertheless, even if this Court were to apply Florida law as Defendants urge, Plaintiff still has stated a valid claim.

The instant case is factually distinguishable from *Hoefling* and other cases asserting that there is no duty under Florida law to an individual member of the public with respect to the enforcement of the law. What distinguishes this case is the allegation that Mr. Baker asked the

10

police for the opportunity to make arrangements to secure his vessel, but his request was denied. It is further alleged that the *M/Y Time Out* was left floundering in rough surf and high winds. [DE 1 at 4].

At this early stage of the litigation, these allegations are sufficient to raise a special duty under Florida law on the part of the officers on the scene. The analysis of a special duty tort in *Pollack v. Florida Dept. of Highway Patrol*, 882 So.2d 928 (Fla. 2004), is instructive here. "The premise underlying this theory is that a police officer's decision to assume control over a particular situation or individual or group of individuals is accompanied by a corresponding duty to exercise reasonable care." *Id*. at 935.[3]

Defendants separately argue that the Verified Complaint must be dismissed, because the Plaintiff failed to comply with Fla. Stat. § 768.28. As noted in Plaintiff's responding papers, this section does not apply to maritime cases. *See, generally Workman v. New York City*, 179 U.S. 552, 573-74 (1900)(local law does not control maritime law).

Finally, Defendants argue that this case must be dismissed as against the Town Police Department. Defendants' moving brief states, in conclusory fashion, that the Town Police Department must be dismissed from this lawsuit, because it does not have any legal existence separate and apart from the Town itself. [DE 9 at 4]. Defendants rely upon *Ball v. City of Coral Gables*, 548 F. Supp.2d 1364 (S.D. Fla. 2008). The *Ball* Court noted that:

---

[3]Plaintiff also argues that the Town's police department "had undertaken the customary duty to make arrangements to secure the vessel, but failed to follow through and insure the vessel was in fact secured." [DE 10 at ¶ 35]. Plaintiff cites to an exhibit to Defendants' moving papers, which the Court cannot consider in connection with this motion to dismiss. Plaintiff has no such claim in the Verified Complaint; therefore, the Court has not considered this argument in reaching its decision.

> The Eleventh Circuit has stated that '[s]heriff's departments and police departments are not usually considered legal entities subject to suit.". . . The capacity to sue or be sued is "determined by the law of the state in which the district court is held.'" . . . Under Florida law, "'where a police department is an integral part of the city government as the vehicle through which the city government fulfills its policing functions it is not an entity subject to suit.'" . . . .

*Id*. at 1369. The Coral Gables Police Department was granted summary judgment based upon an affidavit from the Chief of Police outlining that the Police Department met these criteria. *Id.* at 1369-70.

Plaintiff has alleged that the Town of Palm Beach Police Department is a department of the Town of Palm Beach. Defendants' attorneys have argued that the Police Department does not have any legal existence separate and apart from the Town itself, but the Court cannot rely upon this statement. Any facts supporting this statement are in the possession of Defendants. Plaintiff should have an opportunity to conduct discovery on this issue. Then, this issue can be properly addressed by a motion for summary judgment, as was done in the *Ball* case.

## CONCLUSION

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendants Town of Palm Beach and Town of Palm Beach Police Department's Motion to Dismiss Plaintiffs' Verified Complaint [**DE 9**] is **DENIED WITHOUT PREJUDICE**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 6th of September, 2017.

_____
KENNETH A. MARRA
United States District Judge