UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-81771-CIV-MARRA/MATTHEWMAN

BLUE WATER ENTERPRISES, INC.,

       Plaintiff,

v.

TOWN OF PALM BEACH, FLORIDA, and the
TOWN OF PALM BEACH POLICE DEPARTMENT,

       Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendants Town of Palm Beach and Town of Palm Beach Police Department's Motion for Summary Judgment [DE 32]. The Court has reviewed all papers submitted in connection with the motion, the entire file, and is otherwise duly advised in the premises. The motion is ripe for the Court's consideration.

**I.  Summary Judgment Standard**

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  After the movant

1

has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

## II.  Background Facts

The facts, as culled from the evidence submitted in admissible form by the Parties in connection with the motion, and reasonably inferred therefrom in the light most favorable to Plaintiff for the purpose of this motion, are set forth below. The Court notes that Plaintiff has not fully complied with Rule 56.1 of the Local Rules of Civil Procedure.  To the extent Plaintiff did not controvert Defendants' facts with evidence supported in the record, Defendants' facts are deemed admitted where they have record support.

Plaintiff Blue Water Enterprises, Inc. ("Blue Water") is a Delaware Corporation which owns the *M/Y Time Out*, the vessel at issue in this case. [DE 33-2].  Thomas Henry Baker ("Baker") is the President of Blue Water and the Master, or Captain, of the vessel. [DE 33-3 at 3, lines 18-24].  Karol Poulos ("Poulos") was the Secretary/Treasurer of Blue Water. [*Id*. at 4, lines 20-24]. Both Baker and Poulos had authority, as company officers, to act on behalf of Blue Water. [*Id*. at 6, lines 7-14].

In the early morning of September 7, 2016, Baker was navigating the *M/Y Time Out* from the Bahamas to Palm Beach County, Florida. [*Id.* at 8, lines11-23].  The *M/Y Time Out* engine

failed, and Baker sent out a "may day" call to the United States Coast Guard. [DE 33-4 at 4, lines 1-3]. Baker then lost control of the vessel, which ended up on a sand bar. [DE 33-3 at 10, lines 15-19]. This was around 2:30 a.m. [DE 33-11 at 6, lines 19-24].

The first person to arrive on the scene was Rob Remick, a duty captain for towing company SeaTow Palm Beach. [DE 33-4 at 5, line 24]. Mr. Remick testified that he heard the May Day call saying that the operator of the vessel had missed the inlet. [DE 33-4 at 3-4]. Mr. Remick went out to the inlet in a boat to look for the vessel. [*Id*. at 4]. He arrived between 8-10 minutes after he heard the may day call. [*Id*. at 5, lines 21-22].

After arriving and assessing the situation, Mr. Remick could not get his boat closer than 100 yards away. He determined that it was not safe for him to anchor his boat and swim to the vessel. [*Id*. at 6, lines 15-23]. Mr. Remick called another captain, Will Beck, who headed out to meet him. [*Id*. at 6-7].

Tow Boat U.S. arrived on the scene about five minutes after Mr. Remick arrived. [*Id*. at 7]. Chris Shaffner is the owner of Tow Boat U.S. Palm Beach, which assists in the towing and recovery of vessels that are damaged, disabled or sunk. Mr. Shaffner compared his company to Triple A for road service. His company has U.S. Coast Guard credentials with a towing endorsement. The company has been so licensed for over 20 years. [DE 33-5 at 3].

Mr. Shaffner swam to the vessel. [*Id*. at 6, lines 16-20]. Upon boarding, he ascertained that the vessel was listing to port, on the beach, and water was in all of the lower cabins. [*Id*. at 7]. He assisted Baker and Poulos onto the shore. [*Id*. at 11]. At their request, he went back on board to recover some of their personal items. He found Mr. Baker's wallet and a cell phone, and gave them these items. [*Id*. at 15].

The police arrived about 10 minutes after Tow Boat U.S. arrived. [DE 33-4 at 7, lines 17-19]. Mr. Baker and Ms. Poulos were on the beach when the police arrived. [DE 33-5 at 15, lines 23-25]. After conducting a roadside sobriety test on Mr. Baker, he was taken into custody by the police for boating under the influence at 4:26 a.m. [[DE 33-6 at 4].

Mr. Shaffner testified that prior to Mr. Baker being taken into police custody, he tried to arrange with Mr. Baker to begin a salvage or removal.

> A. For us to conduct and begin a salvage or wreck removal, as the case may be, I need documents signed, I need money, you know, confirmed, and I couldn't get any of that done with him in the back of the police car. I had asked him for all that stuff when we were on the beach, and he asked me how much it was going to cost, and said that he had a friend who was going to go do it, and he didn't – he refused our services on the beach.
>
> That's why we didn't start anything, because he had refused our, our offer of assistance. I was hoping that – I continued to hope that he would change his mind and provide us a contract, but we could never get that secured.
>
> Q. All right. So when he's on the beach with you and his female passenger, you advised him that, hey, you know, I need your permission, I've retrieved your wallet for you, I need a credit card, I need some form of payment in order to secure or salvage your vessel, and he declined?
>
> A. Yes.
>
> Q. And this is certainly well before he was in the back of a police car?
>
> A. That was before he was in the back of the car, yes.

[DE 33-5 at 17-18].

Mr. Shaffner testified that he tried "to convince [Mr. Baker] that he needed to secure the job and something needs to get done sooner than later, because the situation was not improving",

4

but he continued to refuse. [*Id*. at 19].

Mr. Baker testified that he pointed out to the police that the boat needed to be secured. [DE 33-3 at 9, lines19-25]. When asked if the police said anything back to him, he testified , "I don't remember." [*Id*. at 10, lines 1-2]. He continued that he was thereafter "detained and unable to make timely arrangements for towing of the vessel."[1]

Ms. Poulos was not taken into custody. [DE 33-11 at 3, lines 8-15]. She testified that after Mr. Baker was taken away by the police, she had his backpack and "a credit card of his that belonged to Blue Waters to take care of things." [*Id*. at 3, lines 10-12].[2]

Mr. Shaffner testified that he had spoken with Ms. Poulos later during the day of the incident. [DE 33-5 at 20].[3] He testified that "she wasn't able to provide what we needed to

---

[1]There is a dispute raised in the papers between the parties relative to whether the vessel could have been "towed" at this point in time. Defendants argue that the vessel could not be salvaged, and, therefore, Plaintiff has suffered no damages. [DE 32 at 15-16]. Plaintiff counters that two towing and salvage captains testified that the vessel could have been salvaged in the early hours after the incident. [DE 38 at 4-6]. Although it is accurate that Mr. Shaffner told Baker and Poulos that the boat could not be towed in the condition it was in, the testimony was clear that he simply meant it could not be towed without some intervention, not that it could not be towed at all. [DE 33-5 at 9-10]. Plaintiff submitted evidence that the vessel was salvageable. Whether the vessel had any value at this point in time did not impact the Court's decision herein and is rendered moot hereby. This factual dispute is not material and does not bar an award of summary judgment.

[2]Ms. Poulos testified that she used the credit card to buy cigarettes: "And so because I had Tom's credit card for Blue Waters, at that point I didn't care even though you're not supposed to buy that stuff with that, but I didn't care." [DE 33-11 at 4-5].

[3]Mr. Shaffner described the conversation as having taken place "during that next day". [DE 33-5 at 20]. It was clear, however, that he was using the phrase "next day" colloquially, as the incident had occurred in the middle of the night of the same day. This is clarified by his testimony that at the time of his conversation with Ms. Poulos, Mr. Baker was still in police custody. [*Id.*]. Other evidence establishes that Mr. Baker was released from police custody on the same calendar day he was arrested. [DE 33-3 at 14-15]. So, Mr. Shaffner's conversation with Ms. Poulos occurred later during the same day as the incident.

secure the job." [DE 33-5 at 26, lines 12-13]. In response to his request for her to sign an agreement and provide him with a deposit, she said that she needed to wait until Mr. Baker got out of jail. [*Id*. at 26].

Plaintiff submitted no evidence to refute any of this testimony. At his deposition, Mr. Baker testified that he did not remember the contents of any conversations with Mr. Shaffner or Mr. Beck. [DE 33-3 at 13, lines 18-22].

Mr. Baker was released from police custody and returned to the site, where the vessel was still in the water ten hours after the incident. [DE 33-3 at 14-15]. Five days later, he received a derelict vessel notice by the Florida Fish and Wildlife Conservation Commission. [*Id*. at 16]. He never removed the vessel from the water. [*Id.* at 17].

Plaintiff brought the instant action, alleging one count in negligence.  Plaintiff alleges that Defendants had a duty to protect Plaintiff's property by having its vessel towed and impounded, and that this duty was breached. [DE 1 at 5, ¶¶ 27-28]. Plaintiffs further allege that Defendants breached their duty to Plaintiffs and violated section 823.11, Florida Statutes, when they left or abandoned the *M/Y Time Out* in a wrecked condition upon the public waters of this state. Plaintiff notes that the violation of this section is a first degree misdemeanor [*Id*. at 6, ¶ 29].[4]

### III. Discussion

The Court previously denied Defendants' Motion to Dismiss, finding that at that early stage of the litigation, when the Court was bound to accept all of Plaintiff's allegations as true, Plaintiff had stated a claim. [DE 25]. The only salient facts before the Court then, as stated in

---

[4]No Party discussed the §823.11 allegation in connection with the prior Motion to Dismiss, and neither Party has discussed it herein. It appears to have been abandoned by Plaintiff, and properly so, as by its terms, this statute applies to the owner of a vessel.

Plaintiff's Verified Complaint were as follows:

> 18. Plaintiff Baker asked the police for the opportunity to make arrangements to secure his vessel. His request was denied. The *M/Y Time Out* was left floundering in rough surf and high winds.
>
> 19. In violation of generally accepted policies, procedures and practices exercised by law enforcement statewide in Florida, the Town of Palm Beach police failed to make arrangements to tow and impound the *M/Y Time Out*.

[DE 1 at 4].

This Court noted that: "In admiralty the duty of care may be derived from three basic sources: (1) duly enacted laws, regulations, and rules; (2) custom; and (3) the dictates of reasonableness and prudence." SCHOENBAUM, ADMIRALTY & MARITIME LAW § 5.2 (5th ed. 11/16 update)(citations omitted). The Court found that the Complaint adequately alleged that custom and the dictates of reasonableness and prudence created a duty on the part of the Defendants.

The Court noted Defendants' reliance upon *Hoefling v. City of Miami*, 17 F. Supp.3d 1227 (S.D. Fla. 2014), *aff'd in part, rev'd in part, and remanded for further proceedings*, 811 F.3d 1271 (11th Cir. 2016). The lower court in *Hoefling* held that in the absence of any cases under maritime law stating that police officers owe a duty of care to an individual member of the public with respect to the enforcement of the law, Florida law precluding such a claim controlled. 17 F. Supp.3d at 1241.

This Court did not agree that the absence of a maritime case on point necessarily required the application of state law. Nevertheless, the Court noted that even if this Court were to apply Florida law as Defendants urge, Plaintiff still had stated a valid claim.

7

At that time, the Court found that the instant case was factually distinguishable from *Hoefling*, and other cases asserting that there is no duty under Florida law to an individual member of the public with respect to the enforcement of the law.  The Court found that what distinguished this case was the allegation that Mr. Baker had asked the police for the opportunity to make arrangements to secure his vessel, but his request was denied, and that the *M/Y Time Out* had been left floundering in rough surf and high winds.

The Court found these allegations to be sufficient to raise a special duty under Florida law on the part of the officers on the scene. The Court noted that the analysis of a special duty tort in *Pollack v. Florida Dept. of Highway Patrol*, 882 So.2d 928 (Fla. 2004), was instructive here. "The premise underlying this theory is that a police officer's decision to assume control over a particular situation or individual or group of individuals is accompanied by a corresponding duty to exercise reasonable care." *Id*. at 935.

Plaintiff now relies upon this Court's analysis in opposing Defendants' Motion for Summary Judgement; however, the Court is no longer limited to the facts in the Verified Complaint.  The uncontroverted facts submitted by Defendants and Plaintiff present a very different picture of what occurred the night the *M/Y Time Out* ran aground. Where the Verified Complaint alleged that Mr. Baker was arrested without his having been given an opportunity to have the vessel towed, the evidence in admissible form submitted by both Parties demonstrates the contrary.

The only evidence in admissible form that Plaintiff has submitted to the Court to address the duty issue is the deposition of Officer Lee. [DE 38 at 3-4 and DE 38-1].  Plaintiff argues that the facts as set forth in this deposition show that Officer Lee assumed control over the situation

and individual, and, therefore, had a corresponding duty to exercise reasonable care over the situation. [DE 38 at 4 ¶18]. Plaintiff argues in conclusory fashion that the police officers breached their duty of reasonable care when they failed to make arrangements to have Plaintiff's vessel towed.  Plaintiff  concludes that Defendants have not shown that it was reasonable or prudent to remove the master of the vessel from the scene without making reasonable arrangements for the care of the vessel.  Plaintiff states that Defendants left the vessel floundering in the surf to take on water and sand [*Id*. at ¶¶19, 21,22].

      The problem with Plaintiff's argument is its failure to factor in the facts set forth above. Plaintiff persists in describing the scene as the Officers removing the master of the vessel and leaving the vessel floundering in the water. In fact, Mr. Baker, the master of the vessel, had an opportunity to arrange for the vessel to be towed before he was taken into custody by the police. Ms. Poulos (who had an ownership interest in Plaintiff corporation and was its Secretary/Treasurer) was on site, was not arrested, and could have arranged for the vessel to be towed.  There are simply no facts before the Court in admissible form to support Plaintiff's argument that Defendants took control of the vessel from Plaintiff.

      Furthermore, in attempting to support its narrative, Plaintiff has submitted evidence in admissible form that actually supports Defendants' motion.  Plaintiff admits that the Officer gave Mr. Baker permission to go back to the vessel with Mr. Schafer.[5] [DE 38 at 3 ¶14 and DE 38-1 at 4, 18:20-24]. Plaintiff submits deposition testimony of Russell Inman who agreed that if Mr. Baker had authorized Chris Schaffner of Sea Tow to do the repair work that morning, the boat

---

[5]The Court assumes that the spelling "Mr. Schafer" is a scrivener's error by the stenographer and that the reference was to Mr. Schaffner.

9

could have been taken away "easily". [DE 38-2 at 4, 130:17-23].  It was Mr. Baker and then Ms. Poulus who chose not to do so, abrogating their responsibilities as corporate officers.[6] There is no legal basis for Plaintiff to shift that responsibility from its corporate officers to the Defendants.

The facts now before the Court are determinative.  There are no genuine disputes over any material facts. On the evidence submitted in admissible form by both Plaintiff and Defendants, the Court finds that Defendants had no duty to Plaintiff under either Federal Admiralty Law or Florida Law.  At no point in time did Defendants take control over the vessel. Plaintiff was not prevented from making the necessary arrangements to take care of the vessel, either by Mr. Baker prior to his arrest, or by Ms. Poulus after Mr. Baker was arrested.  Absent a duty, Plaintiff's negligence claim fails. *See Pollack*, 882 So.2d at 932.  Since this conclusion disposes of Plaintiff's entire case, there is no need for the Court to address the other issues raised by the Parties.

Therefore, in accordance with the conclusions reached above, it is hereby **ORDERED AND ADJUDGED** that Defendants Town of Palm Beach and Town of Palm Beach Police Department's Motion for Summary Judgment [**DE 32**] is **GRANTED WITH PREJUDICE**. In

---

[6]Had Mr. Baker owned 100 percent of the vessel directly, Ms. Poulos would have had no legal obligation to take action to protect it. That was not the situation here. Mr. Baker chose to have a corporation own the vessel.  This Court has no reason not to respect that choice. Plaintiff corporation cannot be heard to complain that the police did not protect its interests when Plaintiff's Secretary/Treasurer and part owner was present at the scene after Mr. Baker's arrest.

accordance with Fed. R. Civ. P. 58, final judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 22nd day of March, 2018.

                                                                                     KENNETH A. MARRA
                                                                                     United States District Judge